# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **SANDRA TORRES CARREON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **Case No. 3:15-CV-2089-K-BK** |
| | § | |
| | § | |
| **WILLIE KING and LOCKWOOD &** | § | |
| **SON TRUCKING & CONSTRUCTION** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

Pursuant to the District Court's *Order of Reference*, Doc. 119, this cause is before the Court on Defendants' *Motion to Strike all Future Costs and All Medication Costs from the Opinions and Report of Laura Lampton*, Doc. 83, *Motion to Exclude Certain Testimony of Plaintiff's Experts*, Doc. 86, and *Motion to Strike Testimony of Plaintiff's Expert Thomas Truss*, Doc. 89. The motions relating to Lampton and Truss, Doc. 83; Doc. 89, are **GRANTED**, and the motion relating to the testimony of other experts, Doc. 86, is **GRANTED IN PART**.

## A. Procedural History

Plaintiff is suing Defendants for injuries she sustained in a motor vehicle collision in which Defendant Willie King ("King") was operating a tractor-trailer as an employee of Defendant Lockwood & Son Trucking & Construction ("Lockwood") and crashed into the back of Plaintiff's vehicle at highway speed. Doc. 9 at 2. Plaintiff claims that King was negligent in causing the collision, and that Lockwood negligently entrusted a commercial vehicle to King, failed to properly qualify King as a driver of a commercial vehicle, and negligently hired, supervised, and retained King. Doc. 9 at 3-5.

The undersigned previously considered the motions at issue and granted them all because Plaintiff had not responded to them and because the motions appeared to be meritorious.  Doc. 120; Doc. 121; Doc. 123.  Plaintiff quickly sought a reprieve from the district judge, asking to file briefs on the merits, which request was granted.  Doc. 127; Doc. 144.  Plaintiff has since filed her responses, and Defendants have replied.

**B.   Applicable Law**

Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

FED.R.EVID. 702.

The requirement that the testimony help "the trier of fact to understand the evidence or to determine a fact in issue" means that the evidence must be relevant.  *Mathis v. Exxon Corp.* , 302 F.3d 448, 460 (5th Cir. 2002) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)).  Rule 401 defines relevant evidence as evidence having a tendency to make "any fact that is of consequence in determining the action" more probable or less probable than it otherwise would be.  FED.R.EVID. 401.  The *Daubert* "gatekeeping" obligation of the trial court applies to testimony based on scientific, technical, and other specialized knowledge.  *Kumho Tire*

*Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 147-48 (1999).  District courts must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  *Carlson v. Bioremedi Therapeutic Systems, Inc.*, − F.3d −, No. 14-20691 at 5 (5th Cir. May 16, 2016) (citations omitted).

The party offering the expert testimony must prove by a preponderance of the evidence that the proffered testimony is relevant and therefore admissible under Rule 702.  *See Mathis*, 302 F.3d at 459-60.  Moreover, the "test for reliability is exacting."  *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000).  Nevertheless, in determining the admissibility of expert testimony, the district court should give proper deference to the jury's role as the arbiter of disputes between conflicting opinions.  As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion, rather than its admissibility, and should be left for the jury's consideration.  *United States v. 14.38 Acres of Land More or Less Situated in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996); *see also Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562-63 (5th Cir. 2004) (holding that questions relating to the bases and sources of an expert's opinion generally go to the weight of that opinion rather than its admissibility because it is "the role of the adversarial system, not the court, to highlight weak evidence.").  And, as the Court in *Daubert* made clear, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  509 U.S. at 596.

**C. Analysis**

*1. Motion to Strike all Future Costs and All Medication Costs from the Opinions and Report of Laura Lampton (Doc. 83)*

By this motion, Defendants seek to strike portions of life care planner Laura Lampton's Life Care Plan for Plaintiff (the "Plan"). Doc. 83. Specifically, Lampton includes in the Plan a grid which assigns cost values for (1) 45 years of future psychiatric and psychological treatment and counseling; and (2) 45 years of future prescription medications. Doc. 85 at 10-12. Defendants seek exclusion of all future costs in the Plan for both treatment/counseling and medication charges on the basis that the future costs have not been reduced to net present value as legally required. Defendants also seek exclusion of all future medication charges in the Plan because no doctor has prescribed such medication beyond today, and neither Plaintiff's examining psychologist, Dr. Richard Fulbright, nor Lampton can legally prescribe medication. Doc. 84 at 4.

Plaintiff responds that Lampton's opinions regarding Plaintiff's continuing need for medication was based on Plaintiff's medical records, Dr. Fulbright's report and discussion with Lampton, and Lampton's 30 years of experience in the nursing and life care planning industries. Doc. 149 at 3, 5. Plaintiff maintains that any question relating to Lampton's opinions goes to the weight of the testimony rather than its admissibility. Doc. 149 at 4. In terms of the method of calculating future costs, Plaintiff argues that the district judge may reduce any award to present value after trial. Doc. 149 at 5-8.

In reply, Defendants assert that the net present value determination requires an inflation (or deflation) calculation to establish the future income or expense stream for a particular item of damages, and there is no such evidence in this case. Doc. 165 at 4. Defendant also observes that calculating net present value in this case is likely to be unwieldy, as several different modalities

of treatment are projected into the future, yet Plaintiff has not provided any witness with the requisite expertise to make such calculations. Doc. 165 at 5-6. As to the future medication costs, Defendants point out that there is no adequate foundation for Lampton's opinion that Plaintiff will need to take four particular medications for the rest of her life. Doc. 165 at 6-8.

Lampton testified in her deposition that all of the damage calculations she included in her Plan are expressed in 2015 dollars. Doc. 85 at 16. Lampton attested that she did not have the expertise to be able to reduce the damages figure to net present value. Doc. 85 at 16. But lump sum awards for future damages must be discounted to present value in all cases in which it is reasonable to assume that interest may be earned on the amount awarded. *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 536-37 (1983); *see Culver v. Slater Boat Co*., 722 F.2d 114, (5th Cir. 1983) (*en banc*) (holding that fact finders must adjust damage awards to account for inflation according to a below-market discount rate method).

Moreover, the case law does not support Plaintiff's argument that the Court can make that calculation after trial when there is no foundation for the calculations, such as the costs of future medications and treatments, an inflation rate per year, or the correct discount rate that the court should apply. *Cf. Allbritton v. Colonial Life  &Acc. Ins. Co.*, No. 98-CV-0645-BD, 2000 WL 769225, at 4-7 (N.D. Tex. 2000) (Kaplan, J.) (holding that the plaintiff had adequately supported his claim for future damages discounted to present value considering, among other things, that he had started with a growth rate of increased net earnings over the 15 years he intended to keep working, reduced by 27% his estimated expenses relating to his job, determined the income he could expect to make at a new job based on the Consumer Price Index, and all the court was left to do was apply the state statute's mandatory 6% discount rate); *Rangel v. Robinson*, 2007 WL 625042, at *3-4 (Civ. App.—Houston [1st Dist.] 2007) (affirming damages

award on the basis that the trial court could have determined that the future medical expenses plaintiff would incur were greater than the amount awarded and that the present value discount was offset by rising future costs).  In this case, neither Lampton − nor any other witness apparently – is prepared to lay any logical mathematical foundation similar to those that were presented in *Allbritton* or *Rangel*.  Accordingly, Lampton's testimony as to future charges for treatment/counseling and medication is not relevant and, thus, inadmissible.

　　As to the four prescription medications Plaintiff has been taking, Lampton testified that she knew that psychiatrist Dr. Rodolfo Molina had prescribed Plaintiff the Xanax and Lexapro, but she did not know who prescribed the Ultram and Meloxecan.  Doc. 85 at 18.  Lampton had not spoken to any of Plaintiff's health care providers about the medications and acknowledged that none of those providers, except Dr. Fulbright, Plaintiff's examining psychologist, had indicated that Plaintiff would need those four medications for the rest of her life.  Doc. 85 at 18-19.

　　The Court's assessment of whether the reasoning underlying Lampton's testimony "is scientifically valid" and whether that reasoning "properly can be applied to the facts in issue" is that Lampton's testimony on this point cannot stand either.  *Carlson*, − F.3d −, No. 14-20691 at *5.  Her testimony cannot be said to be "the product of reliable principles and methods" when she has no basis for concluding that Plaintiff must take several prescription medications from the current date until her normal life expectancy, which was 46.3 more years at the time Lampton drafted her Plan.  Doc. 85 at 8; *Smith*, 495 F.3d at 227.

　　Accordingly, Defendants' *Motion to Strike all Future Costs and All Medication Costs from the Opinions and Report of Laura Lampton* is **GRANTED**.

*2. Motion to Exclude Certain Testimony of Plaintiff's Experts (Doc. 86)*

In this motion, Defendants seek to exclude certain testimony of Dr. Fulbright, Ms. Lampton, and Dr. Heriberto Callejas relating to whether Plaintiff suffered both traumatic brain injury ("TBI") and/or post-traumatic stress disorder ("PTSD") as a result of the accident. Doc. 87 at 4.

a. TBI

Addressing the TBI first, Defendants note that no physician has ever diagnosed Plaintiff with that condition. Doc. 87 at 7. The only person to purport to do so is Dr. Fulbright who is not a medical doctor, and Lampton then relied on his finding in drafting her Plan, which includes two years of treatment for TBI. Doc. 87 at 7, 10-11. Defendants assert that Dr. Fulbright's opinions regarding Plaintiff's supposed mild TBI are inadmissible because, as a psychologist, he is not qualified to render medical opinions. Doc. 87 at 13-14. Defendants also maintain that Dr. Fulbright's opinion is unreliable because (1) the CT scan performed on Plaintiff immediately following the accident was negative for any brain damage or injury; (2) Dr. Fulbright's opinion that Plaintiff suffered from TBI was formed almost two years after the incident and is based on her allegedly "below average" scores on neuropsychological tests as compared to her high school coursework from 16 years before the accident. Doc. 87 at 14-15.

Plaintiff responds that Dr. Fulbright is qualified to give an opinion about whether she has TBI because his area of practice is neuropsychology, which involves the "evaluation and programmatic rehabilitative treatment of mild to moderate brain injury-related problems." Doc. 146 at 5, 8-9. Further, Plaintiff argues, Dr. Fulbright relied on a battery of tests as well as Plaintiff's historical medical and educational data in drawing his conclusion that she suffered from TBI. Doc. 146 at 10-11.

Defendants point out in reply that Plaintiff suffered only a three-centimeter laceration to her scalp from the accident, and not one treating physician has ever diagnosed Plaintiff with TBI, instead they diagnosed her with a concussion or post-concussive syndrome.  Doc. 162 at 7-8. Defendants urge that Dr. Fulbright's test findings on Plaintiff are too inconsistent and inconclusive for a finding of TBI.  Doc. 162 at 8-9.  Defendants argue that, even assuming Dr. Fulbright is qualified to give an opinion about Plaintiff having TBI, he should not be permitted to do so in this case because there is no foundation for such a finding.  Doc. 162 at 10.

The Court agrees that, in theory, neuropsychologists with a specialty such as Dr. Fulbright are qualified in a general sense to make findings about whether an individual suffers from TBI.  *See Miller v. Drake*, 420 F.3d 356, 362 (5th Cir. 2005) (finding that a psychologist's diagnosis of PTSD and possible mild TBI likely would have been admissible in the punishment phase of a criminal case); *PNS Stores, Inc. v. Munguia*, No. 14-14-00319, − S.W.3d − at *2, (Civ. App. Houston [14th Dist.] (Jan. 12, 2016) (neuropsychologist testifying in opposition to physician's testimony and concluding that Plaintiff had sustained a concussion or a TBI); *Gullett v. Johnson*, No. 05-01-00506, 2002 WL 1641565, at*2 (Civ. App.—Dallas 2002) (discussing competing neuropsychologists' opinions about whether plaintiff had suffered TBI in a car accident).  Moreover, given Dr. Fulbright's credentials, the Court finds him to be sufficiently qualified to diagnose TBI.  *See* Doc. 147-3 at 2-14 (Dr. Fulbright's curriculum vitae).

Dr. Fulbright noted in his report that he based his opinions on his evaluation of Plaintiff, interviews with her and her family, and an extensive review of her medical records.  Doc. 88 at 4.  Dr. Fulbright conducted many tests on Plaintiff in reaching his conclusions, one of which is that Plaintiff's cognitive deficits appear to be a result of mild brain impairment.  Doc. 88 at 8; Doc. 147-2 at 16 (report listing more than 25 tests).  According to Dr. Fulbright, Plaintiff's test

results reflect evidence of deficits in her ability to pay attention, multi-task, learn and remember more complex information, and control her response to stress in her daily life.  Doc. 88 at 5-6; Doc. 88 at 6 (chart outlining results).  Dr. Fulbright testified that those deficits were not based solely on one particular test, but that the cited test was considered along with others that measured the same abilities in a different way.  Doc. 88-1 at 15.

Additionally, the fact that the CT scan of Plaintiff's head did not indicate TBI is not conclusive, since other tests that were not administered, such as an MRI, might have yielded a different result as Dr. Fulbright noted.  Doc. 88 at 7.  Finally, Dr. Fulbright testified that all mild TBIs are concussions, Doc. 147-4 at 12, and Plaintiff was diagnosed by her treating physician as having suffered a concussion, Doc. 147-4 at 15.  In particular, neurologist Dr. Pedro Nosnik examined Plaintiff at least twice within the first two months after the accident, and he diagnosed her with post-concussion syndrome.  Doc. 88 at 68, 72; Doc. 147-5 at 4.

In view of the above, the Court finds that Defendants' arguments go more to the weight of Dr. Fulbright's opinion rather than its admissibility.  *Primrose Operating Co.*, 382 F.3d at 562-63 (questions relating to the bases and sources of an expert's opinion generally go to the weight of that opinion rather than its admissibility).  As previously noted, Rule 702 and *Daubert* counsel a liberal approach to the admission of expert testimony on scientific matters.  *Id.*  In this instance, there is a sufficiently reliable foundation for Dr. Fulbright's opinions.  Any perceived inconsistencies or errors can always be explored on cross-examination.  *Daubert*, 509 U.S. at 596.  Therefore, Defendants' motion to exclude is **DENIED** as to TBI testimony and evidence.

b. PTSD

Next, the Court considers whether Dr. Fulbright, Dr. Callejas, and Ms. Lampton should be permitted to testify that Plaintiff suffers from PTSD as a result of the accident.[1]  Defendants seek to exclude any testimony to the effect that Plaintiff developed PTSD as a result of the accident and suffers from "residual PTSD" symptoms.  Doc. 87 at 16.  Defendants also assert that while Dr. Callejas states in Plaintiff's medical records that he believes she has both PTSD and bipolar disorder, as her family doctor, he is not qualified to testify to that.  Doc. 87 at 8-9, 16.  Defendants contend that consequently, any references to PTSD and bipolar disorder in his records and opinions should be stricken.  Defendants note that no qualifying doctor, including the psychiatrist who treated her, has diagnosed Plaintiff with PTSD, and Dr. Fulbright himself testified that Plaintiff does not meet the criteria for PTSD set out in the *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-V").  Doc. 87 at 9, 17.

Plaintiff responds first that, while Dr. Callejas is not going to opine whether Plaintiff has PTSD, there is no authority for the court to strike those portions of his treatment records for Plaintiff that mention PTSD.  Doc. 146 at 12.  Next, Plaintiff maintains that Dr. Fulbright used reliable methods in determining that Plaintiff's persistent symptoms were *consistent with* PTSD, such as subjective tests, interviews with Plaintiff, and review of her medical records, thereby determining that she would require treatment for those symptoms in the future.  Doc. 146 at 12-13, 16.  Further, Plaintiff adds that Dr. Fulbright testified that Plaintiff met several of the DSM

---

[1] Lampton testified that she included treatment for PTSD in her Plan based on Dr. Fulbright's findings.  Doc. 87 at 17-18.  Plaintiff does not purport to present her as an expert witness on the subject.  Doc. 146 at 12.  Nevertheless, Defendants seek to strike all references to PTSD from the Plan.  Doc. 87 at 18-19.

standards for PTSD and exhibited the "classic PTSD symptoms" although they had ameliorated over time to some degree. Doc. 146 at 14.

The evidence of record reveals that Plaintiff received psychiatric treatment from Dr. Rodolfo Molina who diagnosed her with "major depressive disorder, single episode, moderate" and with an "unspecified" anxiety disorder. Doc. 88-1 at 57; Doc. 147-8 at 4. Dr. Molina's report of December 1, 2014, stated that Plaintiff "denied PTSD" among other things. Doc. 147-8 at 3. Dr. Fulbright testified that a diagnosis of PTSD needs to be based on the criteria set forth in the DSM. Doc. 147-4 at 22. He determined that at the point he examined Plaintiff, she exhibited residual symptoms of PTSD without meeting the DSM description for the "full-blown, full-criteria" disorder due to the passage of time. Doc. 147-4 at 25. Specifically, she met at least three of the five requirements, essentially the "core" symptoms of PTSD. Doc. 147-4 at 25-26.

Defendants' expert neuropsychologist, Dr. Randall Price, stated in his report and deposition that Plaintiff's records indicate that she sustained a concussion although he opined that it was not a permanent TBI. Doc. 145-7 at 6; Doc. 147-6 at 29, 33. Additionally, he stated that Plaintiff, while endorsing some trauma-related fears, did not meet the criteria for a diagnosis of PTSD. Doc. 147-5 at 16-17; Doc. 147-6 at 23-24. His opinion was that she should be treated for anxiety, depression, and pain but that she did not have PTSD and, as such, should not be treated for it. Doc. 147-6 at 25.

As an initial matter, because it is not disputed that Dr. Callejas was not qualified to render a diagnosis as to whether Plaintiff had PTSD and/or bipolar disorder, he may not testify regarding those matters. For the same reason, to the extent Dr. Callejas' medical records for Plaintiff refer to her alleged PTSD and bipolar disorder and are actually offered as evidence in this case, those portions of the records should be redacted to eliminate any such references.

11

Additionally, both Dr. Fulbright and Dr. Price agree that at the time they were asked to diagnose Plaintiff's condition, she did not meet the diagnostic criteria for PTSD.  Dr. Fulbright's "guesstimate" that she met the criteria at some point before he examined her is mere speculation.  Nevertheless, it is not seriously disputed that Plaintiff has exhibited trauma-related fears such as anxiety, depression, pain, irritability and the like since the accident.  While these may well be symptoms of PTSD, common sense dictates that not everyone who has these symptoms has PTSD.  Moreover, to call such symptoms "residual PTSD symptoms" is misleading because there is no basis in fact for a finding that Plaintiff had PTSD at any point in time after the accident.  Further, considering that references to PTSD have become so commonplace that the members of the jury will have likely heard of it, and, as a consequence, may afford extra weight to the use of that term, the Court finds that any testimony that mentions PTSD without adequate foundation is likely to be confusing and, therefore, is impermissible.  This includes testimony that Plaintiff has symptoms "consistent with" PTSD.  That descriptor is not necessary to convey the nature and severity of Plaintiff's anxiety and other symptoms and would serve to prejudice Defendants and confuse the jury.  *See Bayas v. State*, No. 08-09-00241-CR, 2011 WL 2714114, *5 (Civ. App.--El Paso 2011) (upholding the exclusion of evidence that defendant had PTSD because its prejudicial effect outweighed its value as an explanation for the defendant's conduct); FED.R.EVID. 403.  Accordingly, Defendants' motion to exclude from evidence the mention of PTSD is **GRANTED**.

*3.  Motion to Strike Testimony of Plaintiff's Expert Thomas Truss (Doc. 89)*

Defendants next move to strike the expert testimony of Thomas Truss, who Plaintiff has retained as a "motor vehicle and heavy truck specialist."  Doc. 90 at 5.  Defendants argue that Truss's opinions should be stricken and he should not be able to testify about them because his

opinions are inadmissible legal conclusions and, in any event, are inaccurate or lack a foundation. Doc. 90 at 6-18. Additionally, Defendants assert that Truss's opinions are unreliable and he is not sufficiently qualified. Doc. 90 at 18-19.

Plaintiff responds that Truss is sufficiently qualified to testify as an expert witness and his conclusions are reliable based on his extensive experience in the commercial trucking industry. Doc. 152 at 6-12. Additionally, they argue that Truss's opinions are not inadmissible legal conclusions. Doc. 152 at 14-16.

As to Truss's qualifications, a review of his CV and deposition testimony reveals that Truss has (1) maintained his commercial driver's license for over 45 years, Doc. 153-1 at 2; (2) operated commercial motor vehicles of all sizes including medium and heavy trucks, fork trucks, front loaders, tow trucks, and tractor-trailers, Doc. 91 at 55; Doc. 153-1 at 13-17; (3) worked as a commercial motor vehicle driving instructor; (4) conducted numerous training courses on commercial motor vehicles, Doc. 153-1 at 16; (5) served as a consultant for motor vehicle, truck and construction issues, including in the litigation context, for the past 20 years, Doc 153-1 at 15-16; and (6) served as an expert witness to testify about vehicle mechanical problems, compliance with federal rules and regulations, and driver responsibilities, Doc. 153-1 at 15-16. In consideration of the above, the Court finds that Truss is sufficiently qualified.

As to the subject matter of Truss's testimony, Defendants attack three of his findings as inadmissible legal conclusions:

> (a) Lockwood was negligent in conducting the hiring process of [King]; that is, Lockwood failed to exercise the ordinary care of a prudent motor carrier in hiring King;
>
> (b) Lockwood failed to exercise ordinary care in supervising King on the date of the accident; and

(c) King failed to exercise ordinary care in the manner in which he operated his vehicle at   the time of the accident.[2]

Doc. 90 at 5.

The Federal Rules of Evidence permit qualified experts to offer opinion testimony as to industry standards or norms and whether the same were followed in a particular case, as long as such opinions involve questions of fact rather than purely legal matters. *Waco Int'l, Inc. v. KHK Scaffolding Houston, Inc.*, 278 F.3d 523, 533 (5th Cir. 2002); *see Estate of Sowell v. United States*, 198 F.3d 169, 171-172 (5th Cir. 1999) (forbidding expert testimony on whether a fiduciary was "acting reasonably"); *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (holding that the trial court properly excluded expert testimony as to whether corporate officers breached their fiduciary duties to the corporation); *Salas v. Carpenter*, 980 F.2d 299, 304-305 (5th Cir. 1992) (concluding that an expert in the field of hostage negotiation cannot offer opinion testimony regarding whether the defendant exhibited "deliberate indifference or conscious disregard" for the safety of the victim); *cf. Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (holding that expert testimony was necessary to establish the standard of care and whether the defendant complied with that standard).

Just as the Court of Appeals for the Fifth Circuit has affirmed the exclusion of expert testimony on the defendant's state of mind, *Salas*, 980 F.2d at 305, and whether a defendant breached a particular duty of care, *Askanase*, 130 F.3d at 673, Truss's opinions that Defendants were negligent is inadmissible.  Thus, Defendants' objections are sustained as to those legal opinions.  Because the undersigned finds that the statements in question are inadmissible as legal conclusions, the Court

---

[2] Although these conclusions are not direct quotes from Truss's report, Plaintiff does not dispute that she intends to offer Truss as an expert witness to testify in that regard.  *See* Doc. 152 at 6 (response brief stating that Truss concluded "1) that at the time of the collision, Willie King was improperly operating Lockwood's commercial motor vehicle, and 2) that Lockwood was negligent in their hiring, retention and supervision of Mr. King.").

does not address Defendants' additional argument that the statements are unreliable.  Doc. 90 at 18-19.

**D.  Conclusion**

      For the foregoing reasons, Defendants' *Motion to Strike all Future Costs and All Medication Costs from the Opinions and Report of Laura Lampton*, Doc. 83, and *Motion to Strike Testimony of Plaintiff's Expert Thomas Truss*, Doc. 89, are **GRANTED**.  Defendants' *Motion to Exclude Certain Testimony of Plaintiff's Experts*, Doc. 86, is **GRANTED IN PART**.

      **SO ORDERED** on June 13, 2016.


RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE